

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-18-00128-CR

JAMES HAROLD MOON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 336th District Court
Fannin County, Texas
Trial Court No. CR-17-26337

Before Morriss, C.J., Burgess and Stevens, JJ.
Opinion by Justice Burgess

# O P I N I O N

James Harold Moon was convicted by a Fannin County jury of bail jumping and failure to appear[1] and was sentenced to six years and six months' imprisonment. On appeal, Moon complains that the trial court violated his right to confront witnesses against him[2] when it admitted testimony from another proceeding to be read in this proceeding. Because we find no error by the trial court in admitting this testimony, we affirm its judgment.

## I.    Background

Moon was released on bond from the Fannin County Jail after being arrested and detained for aggravated assault of a peace officer, a first-degree felony. The bond was issued conditioned on Moon appearing in court as required by the trial court. When the aggravated assault charges came to trial in May 2017, Moon appeared for jury selection and the first day of the State's case. However, when the case was called the next morning, Moon's attorney informed the trial court that Moon had fallen the night before and that he had not been able to awaken Moon that morning. When it was later determined that Moon had been taken to the Texoma Medical Center in Denison and that at noon Moon was still unable to communicate, the trial court declared a mistrial.

One month later, the State re-tried Moon on the aggravated assault charge. After hearing the evidence, the jury found Moon guilty of aggravated assault of a peace officer as charged in the

---

[1]*See* TEX. PENAL CODE ANN. § 38.10(a) (West 2016).

[2]*See* U.S. CONST. amend. VI.

indictment.  The trial then proceeded to the punishment phase where Moon's estranged wife, Lori,

testified.[3]

---

[3]As relevant to this case, Lori testified:

A. [By Lori] He came by to leave me some papers; some papers for taxes.
Q. [By the State] Just kind of showed up unannounced; isn't that right?
A. Yes.
Q. Now, at the time, he was in the middle of a trial, wasn't he?
A. Yes.
Q. In fact, it was the prior trial for this case, wasn't it?
A. Yes.
Q. All right. And that night, what did -- what did he go do?
A. What do you mean?
Q. Well, did he go back to –
A. Oh.  Well, he went to Windom after he left our house, I think.
Q. Was he -- obviously he wasn't ever able to finish that trial, was he?
A. No.
Q. Why not?
A. He didn't wake up.  I don't --
Q. Why would that be?
A. Too many sleeping pills possibly.
Q. Is that what he told you?
A. Implied that maybe that was what it was.
Q. Okay.  And he had -- he was taken to the hospital.  Right?
A. Yes.
Q. He was -- he was checked in.  Correct?
A. Yes.
Q. And there was what's called a mistrial granted in the trial before.
A. Yes.
Q. Okay.  And then he checked himself out the next day, didn't he?
A. Yes.
Q. And did you text him or call him or anything to check and see how he was doing?
A. Yes, I texted him because I assumed he was still in the hospital.
Q. And how was he -- what was his response to your text?
A. Well, I texted him and said, How are you doing?  And he said, Good.  And I said, Well, that's good.  And he said, Well, you know I don't like this texting.  So, I called him and said, Well -- and he said, Hello.  I said, You sound really good.  He said, Yeah, because I'm on my way home.
Q. Okay.
A. So, I said, Oh, you left.  He said, Yeah, I left.  He said, I got a clean bill of health, so I'm going home.
Q. And then what happened?
A. He was going to get gas and his daughter Emily was going to be bringing him his wallet.
Q. To the house in Windom?
A. To -- I'm not sure if they had decided yet at that point where she was going to meet him to bring it to him.

A few weeks after the retrial, Moon was indicted on the bail jumping and failure to appear charge in this case. Shortly before the trial of this case, Lori died of cancer. During the guilt/innocence stage of the trial of this case, over Moon's objection, the trial court admitted that portion of Lori's testimony from the aggravated assault trial set forth in footnote 3. Moon argues on appeal that the introduction of this testimony violated his Sixth Amendment right to confront the witnesses against him.

## II. Standard of Review

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). Abuse of discretion occurs if the

---

Q.     Okay.
A.     But he went to the gas station. I'm still not a hundred percent sure if it was in Bonham at the time or if she was in Sherman, because we were on the phone.
Q.     What were his plans that he told you he was going to do?
A.     Just kind of lay low until she got the paperwork over to the judge that said he was in the hospital.
Q.     Okay. And where was he going to go?
A.     Going to go to Sherman in the beginning.
Q.     And then where?
A.     North of the river.
Q.     So, Oklahoma?
A.     Oklahoma.
Q.     Because, at the time, there was a warrant out for him. Right?
A.     Yeah. I didn't know this, but Emily did.
Q.     And that's what she told him?
A.     Yes.
Q.     And he told you?
A.     Yes.
Q.     All right. All right. And so, it was his plan to avoid service of the warrant by going out of state.
A.     Yeah, well, originally I think just out of county but then decided it might be better to just go a little farther.
Q.     Okay. All right.
A.     Just to lay low.
Q.     And ultimately he was discovered and arrested before that. Correct?
A.     Yes.
(Internal quotation marks omitted).

4

decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008); *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990) (op. on reh'g). However, the trial court's discretion is constrained by the defendant's constitutional protections, including the Confrontation Clause, which guarantee him "a meaningful opportunity to present a complete defense." *See Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984))). A trial court's "[m]isapplication of the law to the facts of a particular case is a *per se* abuse of discretion." *State v. Ballard*, 987 S.W.2d 889, 893 (Tex. Crim. App. 1999).

## III.    Discussion

The Confrontation Clause states, "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. The United States Supreme Court has held that, "[w]here testimonial evidence is at issue," such as testimony from a prior proceeding, the Sixth Amendment requires the unavailability of the witness and a prior opportunity for cross-examination. *Crawford v. Washington*, 541 U.S. 36, 68 (2004). In this appeal, Moon does not contend that Lori was available, or that he did not have a prior opportunity to cross-examine her at the prior proceeding. Rather, Moon argues that, to satisfy the Confrontation Clause, the prior testimony cannot be used unless the testimony was from the same case,[4] citing *Mattox v. United States*, 156 U.S. 237 (1895). We disagree.

---

[4]Although not entirely clear, Moon also appears to contend that the Confrontation Clause was breached because he did not have the same motive for cross-examining Lori at the punishment hearing of the aggravated assault trial as he would at the guilt/innocence stage of the trial of this case. Moon does not cite any legal authority or provide any substantive analysis supporting this proposition. Consequently, Moon has waived this argument. *See Taylor v. State*,

5

*Mattox* involved the retrial of a murder case. In the second trial, the government read into evidence the transcript of the testimony of two witnesses in the first trial who had since died. *Id*. at 240. On appeal, Mattox contended that this was a violation of the Confrontation Clause. Speaking of the common law as it existed at the time the Confrontation Clause was drafted, the Supreme Court noted that "the authority in favor of the admissibility of such testimony, where the defendant was present either at the examination of the deceased witness before a committing magistrate, or upon a former trial of the same case, is overwhelming." *Id.* at 241. In addressing the circumstances of the case before them, the Court held that the Confrontation Clause would provide the defendant the same guarantee and explained that "[t]he substance of the constitutional protection is preserved to the [defendant] in the advantage he has once had of seeing the witness face to face, and of subjecting him to the ordeal of a cross-examination." *Id*. at 244. Although the narrow holding in *Mattox* affirmed that the Confrontation Clause allowed the admissibility of the testimony at a former trial or hearing of the same case of a deceased witness when the defendant had an opportunity to cross-examine her, the Court did not address whether the prior testimony could arise from a different case. Thus, *Mattox* does not support Moon's contention.

Further, none of the cases cited by Moon support his contention that the prior testimony must have been given in the same case.[5] And none of the other cases cited by Moon require the

---

558 S.W.3d 215, 218 (Tex. App.—Texarkana 2018, no pet.) ("To avoid forfeiting a legal argument for inadequate briefing, an appellant's brief must contain 'a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.'" (quoting TEX. R. APP. P. 38.1(i))); *see Lucio v. State*, 351 S.W.3d 878, 896–97 (Tex. Crim. App. 2011); *Busby v. State*, 253 S.W.3d 661, 673 (Tex. Crim. App. 2008).

[5]*See Crawford*, 541 U.S. at 68; *Mancusi v. Stubbs*, 408 U.S. 204, 213–14 (1972); *California v. Green*, 399 U.S. 149, 165–168 (1970); *Pointer v. Texas*, 380 U.S. 400, 406–408 (1965); *cf. Kirby v. United States*, 174 U.S. 47, 55–61 (1899).

witness to be deceased, or require the testimony to be from a hearing or former trial in the same case. Rather, they only require that the witness be unavailable and that the defendant had an opportunity to cross-examine the witness. In *Crawford*, the Court reviewed the historical record and its own Confrontation Clause jurisprudence. *Crawford*, 541 U.S. at 53–59. It concluded that the Constitution's framers understood the Confrontation Clause as prohibiting "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify and the defendant had had a prior opportunity for cross-examination." *Id*. at 53–54. The Court also concluded that its own jurisprudence had remained faithful to that understanding. *Id*. at 59. We find nothing in *Crawford* that supports Moon's contention that the Confrontation Clause requires the prior testimony to have been given in the same case.[6]

In this case, it is undisputed that Lori was unavailable and that Moon had the opportunity to cross-examine her at the aggravated assault trial. Therefore, we find that the trial court did not violate Moon's right to confront the witnesses against him when it admitted Lori's testimony from the aggravated assault trial. Since requirements of the Confrontation Clause were met, we find that the trial court did not abuse its discretion in admitting the testimony. We overrule Moon's sole issue.

---

[6]We also note that, for over twenty years, the Federal Rules of Evidence, the Texas Rules of Evidence, and the former Texas Rules of Criminal Evidence have allowed the introduction of an unavailable witness' testimony given at a trial or hearing, whether from the same proceeding or a different proceeding. FED. R. EVID. 804(b)(1)(A) (*see* H.R. 5463, 93d Cong. Rule 804(B)(1) (1972)); TEX. R. EVID. 804(b)(1)(B)(i); TEX. R. CRIM. EVID. 804(b)(1). Nevertheless, Moon has not cited any Texas or Federal appellate cases, and we are not aware of any, that hold that the admission of testimony given at a trial or hearing in a different proceeding violates the Confrontation Clause.

For the reasons stated, we affirm the trial court's judgment.


Ralph K. Burgess
Justice

Date Submitted:     April 26, 2019
Date Decided:       May 15, 2019

Publish